## APPEAL OF FIDELITY TRUST CO.

Docket No. 1730.  Submitted September 10, 1925.  Decided January 12, 1926.

Valuation of good will, furniture and fixtures, and rate of depreciation determined.

*Frank C. Neal, Esq.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency of $25,380.98 in income and profits taxes for 1919. The taxpayer contends that, in determining that a profit was realized on the sale of its good will and furniture, fixtures and equipment in 1919, the Commissioner did not correctly determine the March 1, 1913, value thereof, and that the rate of depreciation applied to furniture and fixtures sold was too high.

### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of the State of Washington, with its principal place of business at Tacoma. In 1889 it established a bank in Tacoma, which operated continuously and successfully until January, 1919, when it sold its banking assets, less certain unsatisfactory accounts, to the Bank of California, National Association, hereinafter called the bank. The sale contract dated January 14, 1919, after setting forth the basis of the sale of the taxpayer's resources, provided for the payment by the bank "(3) in addition thereto $25,000 in cash for the banking fixtures, furniture, adding machines, typewriters, safes and other equipment, used in connection with the business of the Trust Company, and (4) $100,000 for the good-will, including deposits and business of the said Trust Company."

On January 18, 1919, a lease was executed by and between the taxpayer as lessor and the bank as lessee, whereby the taxpayer leased to the bank for a stipulated consideration " the banking offices

and premises, including vaults, now occupied by the lessor, on the second floor or Broadway floor of the Fidelity Building," and other premises not here involved. The lease contained the customary provisions whereby the lessee agreed to " keep the leased premises in such repair, order and condition as the same are now or may be put in," and upon the termination of the lease to " surrender and deliver up to the lessor the leased premises in the condition aforesaid, reasonable wear excepted."

A similar lease was executed on the same date whereby the taxpayer leased to the bank the premises, furniture and fixtures, and the business and good will of the Tacoma Safe Deposit Co., a subsidiary of the taxpayer.

On November 12, 1906, the taxpayer entered into a contract with Weary & Alford Co. for labor and materials for enlarging and remodeling its banking quarters. The consideration stated was $28,850. The items making up this amount are set forth in a schedule attached to the contract, as follows:

| | | |
|---|---|---|
| 1. | Cabinet work | $6,958.60 |
| 2. | Marble | 3,975.40 |
| 3. | Bronze | 4,119.16 |
| 4. | Movable furniture | 1,940.86 |
| 5. | Tile and mosaic | 1,848.00 |
| 6. | Cage inclosure and equipment | 1,642.25 |
| 7. | Hardware | 43.75 |
| 8. | Glass | 280.00 |
| 9. | Electric fixtures | 1,147.30 |
| 10. | Plastering and stucco cornices | 1,355.70 |
| 11. | Painting and decorating | 1,596.00 |
| 12. | Steel framing for marble | 160.10 |
| 13. | Deal plates | 89.90 |
| 14. | Draperies | 42.00 |
| 15. | Miscellaneous items from Weary & Alford stock, consisting of special hardware, wicket bars, inkwells, calendar cards, and appliances, etc | 120.00 |
| 16. | Freight and installation expense | 3,530.98 |
| | | 28,850.00 |

This contract was authorized by a resolution of the board of trustees of the same date as that of the contract. Certain extra labor and materials were later found necessary, which were supplied by Weary & Alford at the price of $5,967.28, making a total sum of $34,817.28.

Other expenses were incurred, such as the removal of the old coin vault and construction of a new one, and the purchase of safes and filing cabinets, which, added to the amount paid Weary & Alford, made the total cost of enlarging and remodeling $60,690.88.

At a special meeting held on December 13, 1906, the board of trustees authorized $20,000 charged to the undivided profits account and set aside to apply on the payment of furniture and fixtures for the enlarged banking room. The profit and loss account of the taxpayer for 1907 shows the following debit entries:

Jan. 1, to furniture and fixtures account _____ $20, 000
July 12, to furniture and fixtures account _____ 10, 000
Sept. 14, to furniture and fixtures account _____ 10, 000

The changes in the taxpayer's building were not completed until 1908, and in that year it entered as a debit in its building account the amount of $20,690.88. This amount was subsequently carried into its profit and loss account for the year.

Prior to 1902 the taxpayer had carried its furniture and fixtures as an asset. At or about that time that account was written off. Thereafter nothing was carried in that account.

The taxpayer company had successfully operated since 1889, and on March 1, 1913, was in excellent standing in the community and one of the four principal banks in Tacoma. Its net earnings from 1909 to 1912, inclusive, were as follows:

1909 _____ $80, 867. 80
1910 _____ 88, 493. 08
1911 _____ 69, 595. 94
1912 _____ 76, 223. 76

On March 1, 1913, the taxpayer had total deposits of $3,864,089.28, and its capital and surplus, including all reserves, was approximately $950,000. Its good will had a fair market value on March 1, 1913, of at least $100,000.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be entered on 15 days' notice, in accordance with Rule 50.

### OPINION.

TRAMMELL: We will first dispose of the question of the gain or loss on the sale of taxpayer's good will. In determining the deficiency from which the taxpayer appeals, the Commissioner held the good will to have had a March 1, 1913, value of $40,000, and on that basis determined that a taxable profit of $60,000 had been realized on the sale in 1919.

The valuation of the good will set forth in the findings of fact was shown by the testimony of several bankers of many years' experience in the larger banks of the Northwest, who were familiar with the methods of valuing good will of banks in the territory in

which the taxpayer was located. These men testified to a value of good will of the taxpayer in excess of $100,000. From all the testimony, we are of the opinion that the good will of the taxpayer had a value of $100,000, or more, on March 1, 1913. No taxable gain, therefore, was realized on the sale thereof for $100,000. Under the decision of the Supreme Court in *United States* v. *Flannery*, 268 U. S. 98, no deductible loss was sustained.

With respect to the furniture and fixtures, the taxpayer contends that the Commissioner used too high a rate of depreciation and failed to restore to the furniture and fixtures account certain items which had been charged off, which resulted in the finding of the Commissioner of a profit of $9,073.07, whereas it is contended that there was a loss of $34,762.49.

It appears that during 1907 and 1908 taxpayer enlarged its banking quarters, installed the usual banking fixtures, consisting of counters, desks, partitions, wainscoting, cages, etc., the counters and wainscoting being of marble, the counter tops, desks, and movable furniture being mahogany, and the cages of bronze grille work. At the same time there were slight alterations and renovation of the banking room and the installation of a coin vault of reinforced concrete and steel construction. The total cost of these alterations, fixtures, furniture, and repairs was $60,690.88. Of this amount $40,000 was charged directly to profit and loss for 1907, and $20,690.88 was charged in 1908 against the income of the building, being in effect a write-off of this amount against the profits of 1908.

In the audit upon which the determination of the deficiency is based, approximately $30,000 of this amount is restored to taxpayer's books as of 1907 and 1908 as " equipment," and depreciated from that date at the rate of 10 per cent per annum, thus totally eliminating such items prior to the sale in 1919. The remaining $30,000 has not been restored. A portion of this cost is properly chargeable to building account and another portion to banking fixtures and furniture which passed under the sale in 1919. The precise amount chargeable to each account can not be determined at this time, but from the testimony of the witnesses and the photographs of the banking quarters, taken shortly after the changes were completed, we are convinced that 10 per cent annual depreciation on these assets was too high, that 4 per cent is adequate, and that the cost to the taxpayer of a substantial portion of the assets sold was omitted in computing the profit from the sale. While it is impossible from the evidence to determine what loss was sustained on the sale of the banking equipment, furniture, and fixtures, there is ample testimony that no profit was realized on such sale. Accordingly, the determination that a profit of $9,073.07 was realized was erroneous.